Good morning, Your Honors. May it please the Court. My name is John Heafey, and I represent the appellants Mr. Bellagiannis and Reserve Hotels. This matter comes before the court on a granting of a motion to dismiss a breach of contract claim and the basis for granting that motion was that my clients had not substantially performed their obligations under the contract and therefore were not entitled to pursue a breach of contract claim against the defendant, Mr. Mavrakis. Contract at issue was a settlement agreement arising out of a lawsuit. My client had sought to purchase stock in a company based in Illinois that owned a casino in Greece. He had paid four million dollars to secure that stock purchase. That four million dollars was taken by Mr. Mavrakis and his brother and was never returned and my client did not get the stock in the We sued for recovery of those funds in early 2008. In September of 2012 on the EVA trial, we reached a settlement. Mr. Mavrakis agreed to pay 1.25 million dollars over a period of about a year and as part of that, the reasoning and as you'll see if you review the settlement agreement specifically section 2, the reason was Mr. Mavrakis's financial condition at that point. He had a financial statement that he attached to the settlement agreement showing he had a negative net worth of negative 10 million dollars. At that time, Mr. Balogiannis had also filed a complaint with what I believe is the equivalent of similar claims in connection with this against both Mr. Mavrakis and his wife and also against Mr. Mavrakis and brother Kostas. That matter was filed with him. There is no indication that anything further has ever been done with that. There's nothing in the record to that effect. In connection with the settlement... But he can't withdraw a criminal complaint, can he? That appears to be the problem, Your Honor. You can withdraw, as I understand it, you can withdraw certain types of complaints in Greece, but at least from now what I have seen and what I've been told by the counsel over there, that if they have what they refer to as ex officio claims, there are certain claims that you can, if you file them, it's up to the prosecutor whether they pursue them or not, you don't get to withdraw them. You can withdraw the civil portion of the claims. They seem to have a combined civil and criminal claim associated with it. In connection with the settlement, Mr. Mavrakis made three payments in September, November, and December of $300,000, but when the next $800,000 payment became due, he questioned whether or not the claim in Greece had been withdrawn. He was informed... We sent him the letter that we had sent. He informed us he did not believe that was a withdrawal and refused to pay anything further. At that time, we filed a breach of contract claim and Mr. Mavrakis defended by filing a motion to dismiss, saying that we could not pursue a breach of contract claim because we had breached our obligation to withdraw the complaint. Under Illinois law, summarized in the Insure One versus Hallberg case, a party is entitled to perform or complied with his material obligations. Insure One goes on to state that a party can be excused if he fails, if the other party fails to perform a material obligation. A material breach, according to Insure One and the other Illinois cases, is a breach that, quote, is so substantial and fundamental as to defeat the objects of the parties in making the contract. The court then went on to say that the breach to be material must be so material and important to justify the injured party regarding the whole transaction to be in an event. All of the courts in Illinois consistently state that that question is a fact question. In fact, one of the cases cited by defendants point out that this is a very... materiality is a very complicated fact question. In this case, we have no factual record. We know that there is nothing in the record to show that anything has been done with the Greek complaint for seven years. There's no indication anything's ever going to be done with it. We don't know whether the Greek authorities are even pursuing it. We don't know if what Mr. Belagianis has submitted has effectively withdrawn it. We know none of those things. Isn't it possible to ask the Greek authorities what the status of the... I am told no. Pardon? I am told no. I have asked that repeatedly of the Greek counsel and they've said there's no way until they tell you something. I said don't they give you something indicating whether they've dismissed it or not? They said no. And so we sit in limbo for seven years. Initially, Mr. Belagianis believed that he had submitted something that his counsel told him resulted in a dismissal. I think a fair reading of it that that doesn't appear to me to be that. As a result, we got new counsel and they submitted an additional request to dismiss the claims to indicate that Mr. Belagianis is not going to pursue any claims there. He's released all of his claims in connection with that can't pursue any monetary claims. He's dismissed the action here. Our view is that the way Illinois law should work in this case is the court should have a hearing. They should hear evidence. They should determine whether this is material. And in looking at that, they should determine whether or not this is something that's so fundamental that would have caused Mr. Mavrakis not to go forward with the deal. And the fact is Mr. Mavrakis has already stipulated he's not going to seek to rescind this contract. He is not going to seek to rescind. He has stipulated he will not. He wants to keep all the benefits. He wants to get rid of the lawsuit that he was worried about. He wants to get rid of things and he doesn't want to pay what he agreed to pay. I'm not saying how ultimately will turn out, but I believe that Mr. Belagianis, through his complaint and with the facts that are here, that he has established at least a plausible claim and a reasonable expectation that discovery is going to show that there is nothing, there is no damage resulting from the ongoing re-complaint. That it has either been dismissed or they've elected not to be entitled to produce that evidence and to have that claim heard as opposed to having this dismissed solely on a pleading basis. If the court has any questions, I'm happy to answer them. Okay, thank you Mr. Heathley. Mr. Menkes? May it please the court, my name is Bruce Menkes and I'm here on behalf of Ted about the pleading burden that the plaintiff has in the case. Here the plaintiff omitted to make any allegation about what's clearly an element of breach of contract that the plaintiff himself has substantially performed his obligations. The only allegation in the complaint is that Mr. Belagianis communicated with the Greek authorities and believed that his communication would be effective to have Mr. Mavrakis and his wife Carol Mengel withdrawn as parties in that case. That allegation has never been amended. The district court found, and rightly so, that that allegation is not an allegation of performance, it's an allegation of a belief that performance took place. That simply not meeting the pleading burden. Under Twombly, that's perhaps consistent with the idea that performance had actually taken place, but it doesn't nudge it across the line into showing that it's plausible. It leaves it strictly in the realm of being possible. But what could Belagianis have done? This seems to be in some limbo in Greece. Well, it's not really in a limbo. It may be in a limbo now. We don't have any knowledge about that, probably for the reasons which Ms. Tahiti stated. First, if a letter was written by Mr. Belagianis in 2012 which requested, instead of the case being dismissed, actually requested that the case in Greece be accelerated. So to the extent that a limbo exists, maybe because of that letter, he did the opposite of attempting to get the case dismissed. He attempted to get the case accelerated. Second, if it turns out that his performance in Greece is actually impossible, that's not a defense for him in this case, for two reasons. First, Why not? Wouldn't one read the contract as just requiring him to do whatever he could? And if he's done whatever he could and the Greek system just doesn't allow withdrawal, why would one read the contract to require the impossible? Then it would be an illusory bargain. Well, I think there's two separate questions, Your Honor. First, I think the contract clearly states that withdrawal meant remove. One of the recitals states that the primary object of the parties in this case was to put the litigation behind them to settle the cases and all disputes relating thereto. Clearly, that does not include having the case continue in Greece. But the problem is that you can end a case in an adversarial system, but a private party can't necessarily end a case in an inquisitorial system. So my question is, why would one read this contract to require the impossible? First, the 2014 declaration is not pled in the complaint. First of all, we don't think it's impossible. We believe that he could have accomplished it by asking that all defendants be dismissed in the case, which he chose not to do. But more fundamentally, Your Honor, if hypothetically the contract required him to do a thing which turned out to be impossible, the law is clear about the results of that. The promisee is then relieved from the obligations which happen after that takes place. One would think that that would be an illusory bargain and the court would then set it aside and it would reinstate the original lawsuit and proceed to judgment. Neither party has requested rescission in this case. Rescission probably would have been available to Mr. Mavrakis. He's chosen not to do that. Your Honor, the concept of impossibility comes up, for example, in Restatement Section 237. That section asks the question of what happens when a party who doesn't perform, at least the party who does his performance, is impossible. Is it excused? No, it's not excused. Perhaps he can't be held liable for his own side of the bargain, but the consequence is that the promisee is relieved of their supervening obligations, their obligations which take place after that date. So on that level, the case is simple. There's simply been no allegation of performance was even impossible. On the contrary, we think that the plaintiff took steps which affirmatively made it impossible for the case to be dismissed in Greece. Another issue which comes up is how could the court find, as a matter of law, at the pleading stage that the failure to perform was substantial, or the plaintiff failed to perform a substantial part of their obligations. And while this is normally a question of fact, it's clearly a question of law in this case for a few reasons. First of all, the settlement agreement laid out what the parties were hoping to accomplish. Mr. Heapy is right that a failure to perform is only substantial if it defeats the point of the contract. We have the benefit of the recitals to this contract to point out that the one and to settle the two lawsuits. Settling a lawsuit in the United States doesn't solve the problem because the same allegations are made in both lawsuits, and a settlement here doesn't prevent the Greek court from entering the same remedy that was sought here. In addition, the Greek case sought an additional 1.7 million euros, and it also sought incarceration of Mr. Mavrakis and his wife for a period of 10 years. I think you could argue that that by itself would be material, but even if one wasn't willing to go that far, the settlement agreement is quite clear about what the object was. It was to buy complete peace. Furthermore, the settlement agreement talks about Mr. Mavrakis's obligation to provide truthful testimony against the remaining parties in the case. That clearly suggests he was to be removed as a party, not merely to have Mr. Balianas write a letter saying that he disclaims any further recovery from the case. What also distinguishes this case is not only do we know what the performance had to be, we know that no performance at all took place. Mr. Balianas admits that the 2012 letter, that was written six months before the settlement even took place. After the settlement took place, no further action was taken. In fact, Mr. Balianas allowed that letter to remain on file with the Greek court, and the implication from that is he was hoping that the court would still rule in his favor. He took no steps to withdraw that letter or to mention that he'd given a release to Mr. Mavrakis in the United States. Mr. Balianas brings up the question of the inherent justice of the matter, and we agree that in determining whether or not plaintiff has substantially performed his obligations, the court does look at inherent justice. But inherent justice is not a matter of putting the parties in the same position they would be if both had almost fully performed. It's not a matter of weighing the benefits that were received by the defendant in the case. It is a matter of looking at the circumstances surrounding the breach. In this case, the circumstances surrounding the breach were that Mr. Balianas for two years made no attempts whatsoever to have Mr. Mavrakis and Ms. Mengel released from the Greek case. In fact, did just the opposite. He only made his first attempt when it became apparent that the district judge was going to require him to turn over the 2012 letter. This doesn't seem like the kind of circumstances where his performance should be excused. And it's important to realize that there are also cases in which a promisee who is excused from his performance because of the... Are you suggesting that Balianas, I forget his name, could have done more than he did to try to terminate the Greek proceeding? You said he didn't write a letter withdrawing his, what, 2012 letter. Is there anything else that you think he should have done to try to eliminate the Greek action? Yes, we think he should have asked for all defendants in the Greek case to be dismissed. We think that would have done the trick. Is it too late for that? We think it is. He's had the opportunity now for over 18 months to get a favorable verdict in the Greek case. Just because the court hasn't ruled in his favor during that time period doesn't mean that he didn't have the opportunity. And this court has recognized that opportunities like that have value. Okay, thank you Mr. Menkes. Thank you. Going to the question of impossibility, I want to make it clear we aren't relying on the impossibility defense as stated generally in the common law, but referring to Section 18 of the contract that everybody agreed to, which is Exhibit E, that said, if any portion of this agreement is adjudged invalid or unenforceable to any extent by any court of competent jurisdiction, such provision shall be deemed modified to make it enforceable. That's what we're asking for. In connection with this, Mr. Velagiannis, I believe wrongfully, but he believed that he had dismissed this case. And we can go into the details, but it's not in the record. It's part of the settlement. He told me, I've dismissed Mr. Mavrakis and I've dismissed his wife. I'll put both of them in the settlement agreement. There wasn't any need to, but he did. The fact is, when he filed the 2014 letter, in fact, as we stated to the judge below, we believe that that takes care of it. We're told by counsel that it does. We're told by counsel we can't force any result or anything to come back. And we said, if that doesn't do it, we'll dismiss everybody. That's what we're considering. But as counsel has already pointed out, this settlement agreement anticipated that we were going to proceed against Mr. Mavrakis' brother. This is a case about inherent justice. And that's really what's here. And I would ask the court to look at the Insure One case. In Insure One, there was a claim that the plaintiff had breached an obligation to pay $130,000 in a fairly large transaction. In return, the other party had claimed the insurance company that it was owed $7 million. The defendant defended saying, you breached, therefore we're relieved of our obligation. The court said that's not the right result. The right result is to look at this, weigh the damages, and then allocate, depending on what the damages actually are. That's what I would suggest here. If Mr. Mavrakis has damages to prove as a result of this alleged noncompliance, prove them up, set them off against what he owes us, and we'll go home. Right now, what he wants, what he really and obviously wants, is stated by the fact he didn't want rescission. He wants to keep all the benefits of the bargain. He wants to keep what he really wanted, which was dismissal of the lawsuit here. And he doesn't want to pay for that. Thank you. Okay, thank you very much to both counsel.